IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

JAYSON TERRELLE COMBS,            :
                                  :
        Plaintiff,                :
                                  :
VS.                               :        CIVIL ACTION FILE NO.
                                  :        **1 : 07-CV-111 (WLS)**
CYNTHIA NELSON, Warden, et. al,   :
                                  :
        Defendants.               :
_____

### RECOMMENDATION

Presently pending in this *pro se* prisoner 42 U.S.C. § 1983 action are several motions filed by the defendants.

### *1. Pre-Answer Motion to Dismiss (Doc. 30)*

Defendants Dee Dee Ragan, Sarah Draper, Elaine Hutto, Stephen Shirlock, Kim Bryant, and Teresa Jones have filed this pre-answer motion to dismiss.

Defendants Ragan and Draper assert that service has never been perfected on them. Plaintiff filed his initial Complaint in this action on July 9, 2007. (Doc.  2). On August 13, 2007, a summons was sent to Defendant Ragan. (Doc. 12).  Summons was reissued and service was attempted again on Defendant Regan on October 25, 2007. (Doc. 20). Service was returned unexecuted for Defendant Ragan on November 19, 2007. (Doc.  23). Plaintiff has not made any additional attempt to serve Defendant Ragan.  Service has never been attempted on Defendant Draper.  Plaintiff has stated in his response to the motion to dismiss (doc. 33) that he does not oppose the dismissal of Ragan.

Rule 4(m) of the Federal Rules of Procedure provides as follows:

> Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m) (2007).

Plaintiff has not perfected services on either of these defendants.  Therefore, it appears that they are entitled to have this lawsuit dismissed against them.

Defendants Hutto, Shirlock, Bryant, and Jones contend that they are entitled to dismissal of this action against them because plaintiff failed to file his lawsuit against him within the requisite statute of limitations.  Plaintiff filed his Complaint against Defendants Hutto, Shirlock, Bryant and Jones on February 7, 2008. (*See* Docket  2, Civil Action No. 1:08-CV-23). On February 14, 2008, the Court consolidated this Complaint with the instant action. (Doc.  27).

Plaintiff's causes of action in the instant complaint all arise from the tuberculosis contact investigation conducted at Autry State Prison in September 2005 and alleged exposure sometime during the months of "June, July, August and September 2005." (Complaint, Docket No. 2, Civil Action No. 1:08-CV-23, at page 7, Paragraphs 13-16). Plaintiff allegedly tested positive for tuberculosis on or  about September 28, 2005.

The statute of limitations for filing an action under 42 U.S.C. § 1983 is determined by state law.  Hardin v. Staub , 490 U.S. 536, 538 (1989).  Georgia law provides for a statute of limitations of two years. O.C.G.A. § 9-3-33; see  Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986).

Plaintiff's claims arising from the alleged tuberculosis outbreak arose in September of 2005, when he allegedly tested positive for tuberculosis.  Plaintiff therefore had until September of

2

2007 in which to file his lawsuit.   He did not file the lawsuit against these defendants until February of 2008, several months outside the statute of limitations.

Therefore, it is the RECOMMENDATION of the undersigned that defendants' motion to dismiss be **GRANTED**, and that the claims against defendants Draper, Ragan, Hutto, Shirlock, Bryant, and  Jones be dismissed with prejudice.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

## 2. *Defendants' Motion for Summary Judgment (Doc. 40)*

Defendants Cynthia Nelson and Keith Jones have filed a motion for summary judgment.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992) (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio corp., 475 U.S. 574 (1986)).  However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

At all times relevant to this lawsuit, plaintiff was incarcerated at Autry State Prison.

Defendant Nelson was the Warden at Autry State Prison.  Defendant Jones was the Deputy Warden for Care and Treatment at the Prison during the relevant time period.   In his complaint, plaintiff alleges that defendants were deliberately indifferent to his health and safety by exposing him to active tuberculosis resulting in his testing positive for latent tuberculosis.  Plaintiff states that he spoke with both defendants about the inmates with active tuberculosis at Autry out in the general population, and the need to isolate them.  Plaintiff states that defendants told them there was no room for them in the medical section to isolate all the active cases.

According to defendants, Plaintiff entered the Georgia Department of Corrections system in September 2001 at Georgia Diagnostic and Classification Prison.  Upon his initial intake into the Georgia Department of Corrections, Plaintiff was tested for tuberculosis.  The results were negative.  (Plaintiff's Complaint).

Initial health assessments and physical examinations of all prisoners upon their initial entry into the Georgia Department of Corrections system are governed by Georgia Department of Corrections Standard Operating Procedure ("SOP") VH25-0003.   Per SOP VH25-0003, all inmates entering the Georgia Department of Corrections facilities will receive a physical examination and laboratory/diagnostic tests, including a PPD skin test for tuberculosis.  Upon entry into the Georgia Department of Corrections system, health care providers will also assess the inmate for any symptoms of TB or other infectious diseases.

After this initial intake examination, each inmate under 50 years of age receives a physical examination every two years and each inmate over 50 years of age receives an annual physical examination, pursuant to SOP VH30-0012.  As part of the physical examination, inmates receive a TB skin test, unless that inmate has previously received a positive test result. *Id.*

4

Plaintiff was tested for tuberculosis in September 2001, September 2002, and March 2004, in accordance with GDC Standard Operating Procedures. The results were negative for each of these tests. (Plaintiff's Complaint).

In July 2003, Plaintiff was transferred to Autry State Prison.  Plaintiff was not tested for tuberculosis upon his intra-system transfer to Autry State Prison.  The Standard Operating Procedures for the Georgia Department of Corrections provide that skin tests for tuberculosis are not performed when inmates are transferred between facilities within the Georgia Department of Corrections system. (Doc. 40, Exhibit 2).

In September 2005, an inmate at Autry State Prison was identified with active tuberculosis. Immediately upon identification, the inmate with suspected active tuberculosis was transferred from Autry State Prison to Phoebe Putney Medical Center.  A contact investigation was commenced and conducted in accordance with the Standard Operating Procedures of the Georgia Department of Corrections. Management of inmates with active or suspected active tuberculosis is governed by SOP VH36-0003.   If an inmate develops or is suspected of developing active TB, that inmate will be immediately separated from the general population of the facility where that inmate is housed. *Id.* The inmate will be given a surgical mask and arrangements will be made to immediately transfer the inmate to Augusta State Medical Prison or, if room is not available at ASMP, to a local hospital with appropriate treating facilities. *Id.* The warden of the facility and Millie Reeves, the Statewide TB Coordinator, will immediately be notified. *Id.* The Statewide TB Coordinator and/or Infection Control Coordinator at the facility where the inmate was housed will gather pertinent information regarding the inmate, including past TB test results, patient medical history, and identification of close and casual contacts. *Id.* If advisable, the

Statewide

TB Coordinator will order a contact investigation and the appropriate public health measures to be implemented. (Doc. 40, Exhibit 2).

After an inmate with active TB is identified, an investigation begins to determine who that inmate has been in contact with and who he may have infected (a "TB contact investigation"). TB contact investigations are governed by SOPs VH36- 0003 and VH36-0004. Inmate movement in and out of the facility will be temporarily halted if indicated. All close and casual contacts of the infected inmate, inmates and staff alike, will be given PPD skin tests for tuberculosis.  If a contact has previously received a positive PPD test result, that inmate will be assessed for signs and symptoms of active TB.  Any inmate who previously received a negative PPD test result who tests positively will be assessed for signs and symptoms of TB will receive a chest x-ray and placed on INH medication treatment for nine months.  Persons treated with INH are approximately ninety percent (90%) less likely to develop active tuberculosis.  Inmates who present with signs and symptoms of active tuberculosis will be separated from the population and transferred to ASMP in accordance with SOP VH36-0003. (Doc. 40, Exhibit 2).

As part of the contact investigation conducted at Autry State Prison in September 2005, Plaintiff and other inmates at Autry State Prison were tested for tuberculosis.  On September 23, 2005, Plaintiff tested positive for latent tuberculosis. Plaintiff received INH treatment for nine months after his positive test result for latent tuberculosis.  To date, Plaintiff has not developed active tuberculosis. (Plaintiff's Complaint).

Defendants assert that it was not the policy of the Department of Corrections in 2005, or now, to screen inmates for TB when they are transferred between facilities within the

Department of Corrections system.

To establish that a defendant acted with deliberate indifference, the plaintiff must prove that the named defendant knew that inmates face a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A state prison official violates this right when the official shows deliberate indifference to a known, substantial risk of harm to an inmate.  *See* Helling v. McKinney, 509 U.S. 25, 32 (1993). This standard requires that the prison official be deliberately indifferent to the substantial risk of harm to the inmate. Farmer, *supra*, 511 U.S. at 834. Negligence, even gross negligence, will not constitute deliberate indifference. *Id.*, 511 U.S. at 835-36 and n.4.  *See also* Estelle v. Gamble, 429 U.S. 97, 106 (1976) (establishing that deliberate indifference requires more than negligence). A prison official cannot be held liable for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See* Farmer, *supra*, 511 U.S. at 837. In other words, as stated by the Court in Farmer, a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Id.*, 511 U.S. at 837.   Even if prison officials knew of a substantial risk of harm, they may still be exonerated from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure "'reasonable safety,'" (citations omitted) a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe

custody under humane conditions" (citations omitted). Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause. *Id.*, 511 U.S. at 844-45.

A plaintiff  "is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995) (citing Farmer, *supra*, 511 U.S. at 828, and LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993), *cert den.*, 510 U.S. 1164 (1994)). Each of these three elements must be proved to prevail on an Eighth Amendment claim. LaMarca, 995 F.2d at 1535.

Plaintiff contends that defendants should have screened all prisoners for TB when they transferred facilities within the Department of Corrections, that failure to do so resulted in his exposure to an inmate who had active TB, resulting in plaintiff having to take the INH therapy. Plaintiff, however, has not provided any evidence that defendants, in following the SOPs within the Department of Corrections and established medical protocol for the detection and treatment of those with active and latent TB, were deliberately indifferent to a risk of serious harm. Plaintiff makes many conclusory arguments, all of which sound in negligence.  Plaintiff has not shown that defendants were deliberately indifferent.

As to plaintiff's claims that defendants were deliberately indifferent to his serious medical needs, plaintiff claims that defendant Nelson interfered with his treatment by not allowing him out of his cell during inspections.

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v.

Gamble, 429 U.S. 97 (1976).   However, "[m]ere incidents of negligence or malpractice do not

rise to the level of constitutional violations."   Harris, 941 F.2d at 1505.   It must involve the

"unnecessary and wanton infliction of pain contrary to contemporary standards of decency."

Helling v. McKinney, 509 U.S. 25 (1993).     Knowledge of the medical need alleged or

circumstances clearly indicating the existence of such need is essential to a finding of deliberate

indifference.   Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1191 (11th Cir.

1994), quoting   Horn ex rel. Parks v. Madison Co. Fiscal Court, 22 F.3d 653, 660 (6th Cir.

1994), cert. denied, 513 U.S. 873 (1994).    In the medical context, an inadvertent failure to

provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction

of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim,

a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference

to serious medical needs. It is only such indifference that can offend "evolving standards of

decency" in violation of the Eighth Amendment.   "It is......true that when a prison inmate has

received medical care, courts hesitate to find an Eighth Amendment violation."   McElligott v.

Foley, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

     It is undisputed that plaintiff received the INH therapy to prevent the development of active

TB for nine months.  It is also undisputed that plaintiff did not ever develop active TB.  Plaintiff

offers no other treatment he should have received but did not, nor has he offered any evidence of

additional harm as a result of Defendants' actions.     Again, plaintiff's allegations sound in

negligence, which is not an allegation of a constitutional violation.   To demonstrate

"significant" harm, a plaintiff must provide verifying medical evidence that proves that it was the

denial or delay in medical treatment that caused the harm rather than an underlying condition or

injury.  Hill, 40 F.3d at 1186;  Harris,  21 F.3d at 393-94 (11th Cir.1994).   Nothing plaintiff

has provided the court, nor anything revealed by a review of the record, rebuts defendants'

properly supported motion for summary judgment.

Therefore, it is the RECOMMENDATION of the undersigned that defendants' motion for

summary judgment be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file

written objections to this recommendation with the Honorable W. Louis Sands, United States

District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 5th  day of February, 2009.

/S/ Richard L. Hodge
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE